# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE VASS, and GEORGE VASS, | : | No. 3:06cv1932 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| FACILITY SERVICES & SYSTEMS, INC., | : | |
| Defendant | : | |
| and | : | |
| MESA AIR GROUP, INC., MESA AIRLINES, A Subsidiary of MESA Air Group Inc., U.S. AIRWAYS EXPRESS, U.S. AIRWAYS, INC., U.S. AIRWAYS GROUP, INC. | : | |
| Joinder Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion for summary judgment. Having been fully briefed, the matter is ripe for consideration.

**Background**

This case arises out of Plaintiff Jacqueline Vass's experiences boarding an aircraft at the Scranton/Wilkes-Barre, Pennsylvania International Airport. Vass was a passenger on U.S. Airways Flight 2294 from Scranton, Pennsylvania to Philadelphia, Pennsylvania on January 16, 2005. (Defendants' Statement of Material Facts (Doc. 50-1) (hereinafter "Defendants' Statement) at ¶ 1). Plaintiff

claims she was sprayed with deicing fluid as she boarded her flight. (Id. at ¶ 9). Plaintiff insists that this fluid hit her as she was on the jetway and before she boarded the airplane. (Plaintiffs' Response to Defendants' Statement (Doc. 55) at ¶ 9). After this incident, the airplane experience a slight delay and then departed for its scheduled destination. (Defendants' Statement at ¶ 10).

Plaintiffs filed a complaint alleging negligence against Defendant Facility Services & Systems, Inc. in the Court of Common Pleas of Luzerne County, Pennsylvania on September 5, 2006. (See Doc. 1-3). Defendants removed the case to this court on September 28, 2006. (See Doc. 1). They then answered the complaint (Doc. 2), and the parties engaged in discovery. On January 12, 2007, plaintiffs filed a joinder complaint that named Defendants Mesa Airlines, Mesa Air Group, US Airways Express, US Airways, Inc., and US Airways Group. (Doc. 12). After a period when the case was stayed as one of the defendants passed through bankruptcy, the parties again engaged in discovery. On August 20, 2009, defendants filed the instant motion for summary judgment. The parties then briefed the issue, bringing the case to its present posture.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The plaintiffs are Pennsylvania Citizens, and the defendants are a corporations established and with principal places of business in other states. The amount in controversy exceeds $75,000. Because we are sitting in diversity, the

2

substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by

3

showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

Defendants seek summary judgment on several grounds. The court will address each in turn.

### i. Preemption

Plaintiffs assert a negligence claim brought under Pennsylvania law. To prevail on such a cause of action, plaintiffs must present evidence to demonstrate "(1) a duty owed to [them] by the airline; (2) a breach of that duty; (3) the breach actually and proximately caused [their] injuries; and (4) damages." Bomanski v. U.S. Airways Group, Inc., 620 F.Supp. 2d 725, 729 (E.D. Pa. 2009). Though defendants appear to insist that any such negligence cause of action is preempted by federal law, the real question here is what standard of care to apply to the plaintiffs' case.

Defendants contend that plaintiff's state-law tort claims are preempted by the Federal Aviation Act, 49 U.S.C. §§ 40101 et seq., because plaintiffs have not alleged any specific violations of a federal aviation regulation in their complaint. Defendants point to Abdullah v. American Airlines, Inc., 181 F.3d 363 (3d Cir. 1999) for the proposition that federal regulations must provide the standard of care in any negligence action against an airline. In Abdullah, passengers on a flight between New York, New York and San Juan, Puerto Rico were injured when the airplane

4

encountered severe turbulence. Id. at 365. Flight attendants failed to warn passengers of impending turbulence and the pilot did not change course. Id. Plaintiffs sued in the United States District Court in the Virgin Islands, alleging negligence on the part of both the pilots and the flight crew. Id. After a jury awarded the plaintiffs more than two million dollars, the defendants filed a post-trial motion. Id. at 366. Among other grounds for this motion, defendants asserted that the court had erred in using territorial common law to establish the standard of care for plaintiffs' negligence action. Id. The district court then issued an opinion finding that federal regulations preempted state and territorial regulations of airline safety and ordering a new trial. Id. The trial court certified the preemption issue for interlocutory appeal, which the appellate court granted. Id.

The Third Circuit Court of Appeals found that "the F[ederal] A[viation] A[dministration] and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions." Id. at 367. Thus, "federal law establishes the applicable standards of care in the field of air safety, generally, . . . preempting the entire field from state and territorial regulation." Id. "[T]he standard applied in determining if there has been careless or reckless operation of an aircraft, should be federal." Id. at 372.

The court did not find, however, that such preemption prevented plaintiffs from "recover[ing] damages under state and territorial remedial schemes." Id. at 368.

5

The court noted that "[f]ederal preemption of the standards of care can coexist with state and territorial tort remedies." Id. at 375. The court found that Congress continued to require airlines to maintain insurance coverage to provide for damages to injured or killed passengers, and that "there is no federal remedy for personal injury or death caused by the operation and maintenance of aircraft to be found in the FAA itself." Id. Thus, "the insurance proceeds are to be available as a remedy under state or territorial law." Id. at 376. Accordingly, the court found that "state and territorial standards of care in aviation safety are federally preempted," but that "plaintiffs who are injured during a flight as a result of the violation of federal air safety standards may have a remedy in state or territorial law." Id. at 376. Thus, federal regulations provide the standard of care in a negligence action involving air travel.

Plaintiffs argue that Abdullah does not apply to this case because deicing that occurs before a passenger boards an airplane does not implicate airline safety. They insist that deicing is not pervasively regulated and is thus not subject to preemption. Moreover, plaintiffs contend that preemption applies to events that occur when passengers are inside the airplane, not as they board it: preemption begins "at the door of the aircraft." (Plaintiffs Brief in Opposition (Doc. 57) at 9). In any case, they insist, defendants have not pointed to any federal regulations governing the deicing process, and they have thus failed to meet their burden on summary judgment. Finally, since in their complaint plaintiffs pled a general failure

6

to follow federal law and the Code of Federal Regulations contain a general provision providing that "[n]o person may operate an aircraft in a careless and reckless manner so as to endanger the life or property of another," they have sufficiently made out a case of negligence and loss of consortium. (Id. at 11); see 14 C.F.R. 91.13(a).

The court agrees with the defendants that federal regulations preempt state regulation of aircraft operations under the standard articulated in Abdullah. The case law cited by the plaintiffs does not limit preemption to what occurs within the aircraft or in the skies. Instead, case law establishes that preemption occurs within the field of air safety as established by federal regulation. See, e.g., Allen v. American Airlines, Inc., 301 F. Supp. 2d 370, (E.D. Pa. 2003) (finding that "the Third Circuit *has* decided that the Federal Aviation Act ("FAA") 'establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation.'") (quoting Abudullah, 181 F.3d at 367) (emphasis in original)). In any case, federal regulation of airlines and airline safety is not limited to occurrences in the airplane, but extends to care of runways, loading of aircraft and other measures which serve to get planes in the air. See, e.g., 14 C.F.R., Chapter 1–Federal Aviation Administration, Department of Transportation. Thus, the court finds that deicing is integral to the safe operation of an aircraft, and federal authority preempts state action to set safety standards in that area.

Indeed, though neither party brought them to the court's attention, federal

regulations exist in the area of deicing.[1]  See 14 C.F.R. § 121.629.  Those regulations establish that "no person may dispatch, release, or take off an aircraft any time conditions are such that frost, ice, or snow may reasonably be expected to adhere to the aircraft, unless the certificate holder has an approved ground deicing/anti-icing program in its operations specifications and unless the dispatch, release, and takeoff comply with that program."  14 C.F.R. 121.629 § 121.629(c).  The regulations require that any "approved ground deicing/anti-icing program" contain "at least . . . a detailed description of . . . the procedures for implementing ground deicing/anti-icing operational procedures" and "[t]he specific duties and responsibilities of each operational position or group responsible for getting the aircraft safely airborne while ground deicing/anti-icing operational procedures are in effect."  Id. at §121.629(c)(1)(iii-iv).  The regulations also require "[i]nitial and annual recurrent ground training and testing for flight crewmembers and qualification for all other affected personnel (e.g., aircraft dispatchers, ground crews, contact personnel) concerning the specific requirements of the approved program and each person's responsibilities and duties under the approved program."  Id. at § 121.629(c)(2).  This training must cover "[a]ircraft deicing/anti-icing procedures, including inspection and check procedures and responsibilities."  Id. at § 121.629(c)(2)(iv).  As such,

---

[1]The court does not intend by this opinion to establish the standard of care, but merely to note that the parties should be able to establish the proper standard of care by examining federal regulations in this area.  The purpose of the discovery the parties are hereby ordered to undertake should be to determine the applicable standard of care and determine whether defendants met it.

8

there is a standard of care established in federal regulations that covers the incident here in question.

Defendants' only argument in favor of summary judgment on this claim is that plaintiffs have failed to cite an applicable standard of care, and therefore plaintiffs' negligence claim must be preempted under federal law. Their argument does not address, however, whether any evidence exists that could support a claim that defendants violated the federal standard of care which clearly exists in this case.

Indeed, though defendants argue that "there are no questions of material fact" their actual argument appears to be "the plaintiffs have failed to plead that Defendants violated a federal standard of care." (Defendants' Brief in Support of Summary Judgment (Doc. ) at 9). That argument is more appropriate in a motion to dismiss, at which time the court could grant the motion with leave to re-plead and cite a federal regulation on deicing. Defendants did not file a motion to dismiss. Raising the issue now circumvents the procedures established for dealing with failures in pleading and would leave the plaintiffs without an opportunity to prove their claim. Thus, the court will deny the motion, finding that defendants have failed to meet their burden at the summary judgment stage. They have not explained–given the existence of a standard of care–why no reasonable juror could find for the plaintiffs. The court will, however, deny the motion without prejudice to defendants raising the issue of the standard of care after the parties have had an additional sixty days to conduct discovery on this matter. The parties are directed to

9

engage in any additional discovery necessary to establish and investigate the standard of care within that sixty day period.

### ii. Mesa Air Group, Inc., U.S. Airways Express and U.S. Airways Group

Defendants Mesa Air Group, Inc., U.S. Airways Express and U.S. Airways Group contend that they must be dismissed from the case because they are not proper parties to the lawsuit. U.S. Airways Group and Mesa Air Group argue that they are parent corporations and thus cannot be liable in tort for the actions of their subsidiary corporations unless plaintiffs produce evidence that indicates that the defendant parent corporations exercise control over the operations of their subsidiaries, thus "piercing the corporate veil." In addition defendants insist that U.S. Airways Express is merely a trade name used to describe eight regional airlines flying under that name. As such U.S. Airways express cannot be liable and should be dismissed from the case.

These defendants first insist that plaintiffs have made no claim against them, but have only raised claims against their subsidiaries. In Count I of plaintiffs' joinder complaint, however, plaintiffs allege that her injuries were "caused solely and exclusively by the careless and negligent conduct on the part of the Joined Defendants, and each of them, through their agents." (Joinder Complaint (Doc. 12) at ¶ 13). Named as defendants on this count are Mesa Airlines, Mesa Air Group, U.S. Airways, Inc., and U.S. Airways Group, Inc. (Id.). The complaint lists careless and negligent conduct allegedly committed by the joined defendants, which the court

10

takes to include Mesa Air Group and U.S. Airways Group, Inc. (Id. at ¶ 20). Defendants couch this aspect of their motion as a complaint about the insufficiency of the allegations. The court reads these allegations, however, to indicate that the parent companies engaged in conduct as culpable as their subsidiaries. As such, there is no need to "pierce the corporate veil" to gain liability against U.S. Airways Group and Mesa Air Group. If plaintiffs can establish liability as outlined above, these defendants could be liable.

If plaintiffs cannot establish liability on the part of the parent companies and their agents, however, the question of whether plaintiffs can obtain liability against the parent companies would remain, since legal doctrine in Pennsylvania allows for plaintiffs to obtain liability for a parent company against a subsidiary in some instances. "[T]here is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995). Still, "'a court will not hesitate to treat as identical the corporation and the individuals owning all its stock and assets whenever justice and public policy demand and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless.'" Good v. Holstein, 787 A.2d 426, 430 (Pa. Super. Ct. 2001) (quoting Kellytwon Co. v. Williams, 426 A.2d 663, 668 (Pa. Super. Ct. 1981)). A court will ignore "the corporate form . . . only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime.'" Id. (quoting First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. Ct. 1991)).

Pennsylvania courts have identified several "factors to be considered in disregarding the corporate forum":

> undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetuate a fraud.

Advanced Tel. Sys. v. Com-Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) (quoting Department of Environmental Resources v. Peggs Run Coal Co., 423 A.2d 765 (Pa. Cmwlth Ct. 1980)).

Defendants argue that plaintiff do not allege any facts in their complaint that would justify piercing the corporate veil. Defendants submit the affidavit of Christopher Pappaioanou, Vice President of Legal Affairs for Mesa Air Group, Inc. to support their contention that Mesa Air Group and Mesa Airlines are distinct corporate entities without the sort of intermingling of operations that would allow piercing of the corporate veil. (See Exh. F. to Defendants' Motion (Doc. 50-2)). Papppaioanou's affidavit, which is not challenged by plaintiffs, attests that Mesa Airlines, unlike Mesa Air Group, Inc., "is a common carrier in the business of air transportation of passengers and cargo for profit." (Id. at ¶¶ 7-8). Moreover, Mesa Airlines "hires its own employees and maintains its own customers distinct." (Id. at ¶ 8). Caroline B. Ray, Corporate Secretary for U.S. Airways, Inc., also supplied an uncontested affidavit that swears that U.S. Airways Group, Inc. and U.S. Airways, Inc. are separate and district businesses. (Exh. G to Defendants' Motion (Doc. 50-2)). The uncontested facts in the record establish, therefore, that Defendants U.S. Airways Group, Inc. and Mesa Air Group, Inc., are separate and distinct entities from their subsidiaries without an intermingling of operations. Piercing the corporate veil and

12

imposing liability on those parent corporations for the actions of their subsidiaries would be inappropriate. Plaintiffs must provide evidence of the actual liability of these defendants.

Plaintiffs do not dispute that U.S. Airways Express is not a proper party to the suit. As such, the court will grant the defendants' motion on this point and dismiss U.S. Airways Express from the case.

### iii. George Vass

Defendants argue that Plaintiff George Vass's claim for loss of consortium is derivative of Plaintiff Jacqueline Vass's claim. Since summary judgment is appropriate against Jacqueline Vass, summary judgment should be granted on George Vass's claims as well. The defendants agree that George Vass cannot maintain his claim if his wife's claims fail. The court has found, however, that summary judgment against Jacqueline Vass is not appropriate at this time. Accordingly, the court will deny the motion with respect to George Vass as well.

**Conclusion**

For the reasons stated above, the court will grant the defendants' motion with respect to Defendant U.S. Airways Express and deny it in all other respects. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUELINE VASS, and GEORGE VASS, | : | No. 3:06cv1932 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| FACILITY SERVICES & SYSTEMS, INC., | : | |
| Defendant | : | |
| and | : | |
| MESA AIR GROUP, INC., MESA AIRLINES, A Subsidiary of MESA Air Group Inc., U.S. AIRWAYS EXPRESS, U.S. AIRWAYS, INC., U.S. AIRWAYS GROUP, INC. | : | |
| Joinder Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 19th day of November 2009, the Defendants' motion for summary judgment (Doc. 50) is **GRANTED** in part and **DENIED** in part, as follows:

1. The motion is **GRANTED** with respect to Defendant U.S. Airways Express. The Clerk of Court is directed to dismiss that defendant from the case; and

2. The motion as to the other defendants is **DENIED** without prejudice to the defendants filing another motion for summary judgment that raises the issue of the sufficiency of plaintiffs' evidence that defendants breached the standard of

care. The parties may conduct discovery on the issue of the standard of care during this period. The following case-management schedule shall now apply to the case:

1. Discovery closes on January 20, 2010;

2. Plaintiffs' expert report[s] are due January 20, 2010;

3. Dispositive motions are due February 10, 2010; and

4. Defendants' expert reports are due February 20, 2010.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**